Good afternoon, your honors. May I please report? Deputy Federal Public Defender Patrice Castillo for Roberto Figueroa. I'd like to preserve 90 seconds for rebuttal if I may. This case presents a next- Counsel, can you just stop for a second? At least on my screen, I have a waiting room image. Callie, are you there? Okay. All right. I'm sorry. You were completely obscured. Senator? Yes. Thank you. This case presents a next-generation version of the question-first interrogation tactics held to violate Miranda in Missouri v. Siebert. The one difference between the tactics used in Siebert and the ones here is that detectives did not speak to Mirandais until they had a full confession. They merely waited until Figueroa had admitted his entire story was a lie. Five hours after Figueroa had clearly and unambiguously invoked his right to silence. Detective Cannon testified he understood exactly what Figueroa intended when he made that invocation, but continued questioning without pause because Figueroa had not invoked his right to counsel. The state court gave the San Bernardino Sheriff's Department a free pass on this deliberate end plan on Miranda. Despite the fact that at the time of his invocation, Figueroa had been told he had failed a lie detector test and been confronted with reliable evidence of his involvement in a murder. Counsel, help me sort out a couple of issues here. On the police lying to Figueroa in order to get him to confess, telling him he'd failed a lie detector test, which they were just making up. As I understand it, the constitutional law now from the Supreme Court is police are allowed to lie to the suspect to get him to confess. Is that correct? That is absolutely correct, Your Honor. The question here is whether the police, whether Figueroa had a reasonable belief that he was in custody at the time he invoked his right to silence. Okay, help me on that now, on the reasonable belief that he's in custody. As they talked, when I read it, it looked to me like they kept telling him the door is not locked. And when you're in a negotiation of any sort and you say the door is open, it means you're invited to walk away if you want to. And it looked like Figueroa was thinking as long as he didn't pull the trigger, he was okay. And they couldn't prove he pulled the trigger because he didn't. Why isn't telling him repeatedly that the door is unlocked enough, not enough so that we would say that the police didn't violate Miranda, just enough so that under Richter, we can't say that no reasonable judge, including the state superior court judge, the state appellate judges, the magistrate judge, and the district judge in this case were all unreasonable. Why couldn't at least some reasonable judge think that repeatedly telling him the door is not locked meant that he was not in custody? The reason is this, Your Honor. Mr. Figueroa was repeatedly confronted with the fact that they knew, the detectives knew and had reliable evidence that he was guilty of murder and had taken a part in a murder. And I think once you are directly accused of having been involved in a murder, whether a door is unlocked or not, you're not going to feel free to leave. And in fact, the officers told him, we can sit here for hours or we can come to an understanding. They told him that they knew he was lying. They told him a lot of evidence had been gathered and that they knew he had a gun on the night of the murder. So would a reasonable person in those circumstances, being accused of having an involvement in a murder, actually feel free to leave an interior door? That's not our question. The question is whether any reasonable judge could think that a reasonable person could think that he was free to go. I think the answer to that question is simple, Your Honor, no. Once you've been accused of a murder, I feel that it would be very unreasonable to expect you to feel free to leave a police station when you have not been left alone for a single second. The other thing that's important to know is that... But he was left alone to go to the bathroom, wasn't he? He was offered the choice to go to the bathroom minutes before he was Mirandized and the state court concluded that Mirandization... So at that point, was there anything to stop him from just walking down the hall to the door and leaving? As far as... Could any reasonable judge conclude that he was free to just continue down the hall? If we're talking about literally free, Your Honor, yes, he's literally free to go, but it's not about whether he's literally free to go. It's about whether he feels compelled to stay because of the accusations that are made against him. Counsel, Judge Gould, if I could interject a question. In the interchange between Mr. Figueroa and the detectives, they seemed to... At one point, I thought I read, he was saying if he talked, he'd be killed by the... Presumably by the gang or somebody for being a rat. And they were saying things like he would have bigger problems if he didn't keep talking to them. And am I correct on that? Yes, Your Honor. So my question is, as to the issue of whether he was in custody, whether he should have felt free to leave, what's the significance of if any of those kinds of statements where the cops are telling him he's going to have bigger problems if he doesn't keep talking? That is absolutely, I think, at the core of the issue, Your Honor. It shows that Figueroa could not have reasonably felt he was free to leave at that moment because he was being told that the most important thing for him to do to survive this moment was to keep talking, to stay there and keep talking. And remember, this is hours after he has plainly invoked his right to silence, an invocation that was completely ignored by the detectives in this case. And it's important to remember that in Missouri v. Siebert, the petitioner there was also given a 15- to 20-minute break before he was Mirandized. That was not enough in the mind of the Supreme Court to clear the air of the question-first tactics that the detectives had used. I think it's very important to acknowledge that these were deliberate actions by the detectives. Mr. Figueroa actually asked at the very beginning of the interview, can I please have the card? Meaning the Miranda Rights card. And they said it's not time for the card yet. So they intentionally held off reading him his Miranda Rights in order to get an inculpatory statement from him that would make him feel as if he had no further real right to silence because he'd already blown it. And that's what happened here. I see I'm just about at the two-minute mark. Counsel, Judge Wardlaw will permit me to extend your time a few seconds. Am I correct that the state court never made a determination about whether there was substantial injurious effect of a Miranda violation, assuming that we agree with you on custody? Am I correct we would have to remand to the district court to address the practice? To the first half of your question, Your Honor, you are correct. The state court never reached the question of harmless error. However, because this is a question that is a plain application of law to undisputed fact, I think that you could reach the question here without remand. The prosecution made very plain that the aiding and abetting theory on which Mr. Figueroa was convicted was based on his provision of the gun to Mr. Diaz. The only evidence that Mr. Figueroa provided that gun to Mr. Diaz comes from Mr. Figueroa's own statements, and that's why the admission of his statements is not harmless error. Okay, thank you. Did you want to reserve some time? Yes, Your Honor, if I could just have a minute. All right, you may have the minute. Mr. Beasley? Good afternoon, Your Honor. It's Christopher Beasley, Deputy Attorney General, on behalf of the respondents. Judge Kleinfeld has nailed it as far as what the issue in this case is. In the applicable standard of review, the question is whether the state courts were unreasonable in their application of controlling establishing that pre-court precedent. And there's a general rule as far as the custody question goes. It's a general rule. Because of the generality, it's difficult for a state court. Counsel, your microphone is going in and out. Can you adjust your microphone? Your voice is going in and out. I'm having the same trouble when you lean backwards. Your voice is going out here. Is it better now? Can I speak up? Okay, I'll speak up. The question is whether the state courts applied a general rule of application but was unreasonable in that application. We have here a state court that went through multiple factors in the custody analysis. Yes, there are certain factors that would suggest that. There are many factors. Counsel, you're breaking up again. Pull the mic closer to yourself or something. All right. Try this. I'm not exactly sure what else to do with this microphone, but I'll try to keep my voice up. The way the state court went through. Your argument will work much better if we can hear it. Can you hear me now? Yes, thanks. Yes, I can hear. I have a question for you. Anderson v. Terhune, that Ambach decision, there are a bunch of dissents in it and you could make some distinctions, but it seems to have a flat-out statement that once the suspect says, I plead the fifth, the interrogation is over. How do you suggest we deal with Anderson v. Terhune? Because this defendant was not in custody, Miranda does not apply. So says the United States Supreme Court. So just because he says, I plead the fifth, unless he's in custody, that language has no efficacy whatsoever. He was not in custody, and that's why the state court went through. Counsel, I'm not clear on that. Why do you have to wait till the police decide they're going to give you your rights to assert your right? Because that's what the United States Supreme Court has said. You cannot preemptively invoke the rights under Miranda after custody. That's what the United States Supreme Court has said. He was not invoking a right under Miranda. He was invoking the Fifth Amendment. That's basically the Fifth Amendment right under the Miranda rule. No, it's under the U.S. Constitution. That's correct. But under this kind of situation, this is not something where that would apply because he's not in custody. So that custody inquiry is the inquiry that matters, which is why the state court focused on... Counsel, that's what I'm not sure of. That's my question. Why can't a person who's not in custody invoke their constitutional rights without reference to Miranda? Sure, they don't have to give Miranda unless he's in custody, but that doesn't have the converse implication. You're right. And the United States Supreme Court has never said and given any clearly established law on that kind of a question. That kind of a question is not before this court, and if that question were before this court, this court would run afoul of the retroactivity doctrine by trying to create a new constitutional law that hasn't necessarily been established by the United States Supreme Court. So we're looking at what the state court did here under controlling clearly established United States Supreme Court precedent and under that precedent, the question is, is he in custody? This has never been framed in any other way as any other issue and it's gone into an exhaustion. Judge Gould, if I could interject on your custody argument. Preliminarily, I tend to think Judge Ward-Lotz questioned me. You have some merit exploring despite the argument that he wasn't in custody. But still, just taking that head on, I want to understand in terms of custody, why would a reasonable person objectively feel they're free to leave at a time when the cops are telling them that we know you had a gun, we know you were involved, we know you were with this, you were there when the guy, when the victim from the Roland Cripps gang was shot. We know all that. And if you don't cooperate with us and keep talking, you're going to have bigger problems than if a gang kills you for being a rat. I'm starting to imagine what the bigger problem would be, but that's what the cops were telling us. First, I take exception to that that is what the cops said. I would suggest that the record says that the police said he would have bigger problems if he continued to lie to them, not if he stopped talking. Furthermore, throughout the interrogation, the police told him multiple times the door is open, even after that. They said, the door is unlocked. You don't have to stay here is the implication with that. You can walk down the hall to the bathroom. No one is stopping you. So a reasonable person would feel like, okay, they're giving the invitation, the door is unlocked, I can go to the bathroom if I want, I can get up and I can leave. A reasonable person under those circumstances would feel like, yeah, I can. Now, what's happening here is that we're looking at this from the perspective of a criminal who may want to continue to talk, who may want to talk his way out of it. Is that the reasonable person standard? I would suggest it's not necessarily the actual reasonable person standard. The standard is an objective one, not a subjective one, whether he personally feels free to leave. It's objective, and with these kind of facts, where a person has voluntarily come to the police station, the police have multiple times told him throughout the interview, the door is unlocked, he understands that he can go to the bathroom unaccompanied. All of those kinds of factors together, which the state court went through in a very methodical way, suggests that a reasonable person could conclude, yeah, I'm not in custody, and that's the question. Is there fair-minded disagreement on this? Sure. Some people might disagree with this argument. Some people might agree with it. That fair-minded disagreement is what precludes federal habeas relief in this case. Counsel, question for you. At some point in the state court opinion, I seem to recall that the state court said that Figueroa was informed that he was not in custody. But I didn't really see in reading through it where he was ever informed of that. You are correct. There was never an explicit statement, you are not in custody. That was a reasonable inference that the court was able to draw from the statements that the police officers made to the suspect, Mr. Figueroa, based on the fact that the door is unlocked, based on the fact that he can go to the bathroom unaccompanied, based on the fact that he's come to the police station voluntarily. All of those together leads to the reasonable inference that he is not in custody. So I would submit that that is a reasonable inference. Counsel, help me on a little detail here. I don't know if the record will be any use on it or not. I'm thinking being free to go to the bathroom. Well, you're free to go to the bathroom if you're in a jail cell. And what might be much more attractive as a possibility in this fellow's circumstances would be walk out the door and take a trip to see some Olmec art in old Mexico, be one of the few people crossing the border illegally from north to south. That seems a lot more attractive than going to the bathroom and more inconsistent with custody. Was there anything in the record about whether he could walk out of the building? Not necessarily explicit like that, but the fact that he has that kind of freedom to get up, walk out the door, go to the bathroom unaccompanied in a police station would suggest that I can leave if I want. That's what a reasonable person would be led to believe if that's what the police are telling him. And I think that the state courts can make that kind of a reasonable determination of that reasonableness based on what the United States Supreme Court has said. With the general custody rule, the state court was entirely within its purview to make this kind of a ruling. And unless this is an obvious and indisputable error, obvious and indisputable under Richter, habeas relief is simply not available. And with that, unless this court has any further questions, I will. I have a question for you. Assuming, and I haven't made a final personal assessment, and I'm only one judge, but assuming that I were to disagree with you about him being in custody and thought he was in custody and that they had violated, that the government had violated his Fifth Amendment right to silence as they're reminded to tell accused people under Miranda. Still, I realize the court can't give habeas relief unless there's a substantial and injurious effect under Brecht. And so my question for you is the same one that I asked your colleague on the other side of the case. And that is, if we were to determine that there was a, that he was in custody and that the government had violated his rights under the Fifth Amendment to silence or under Miranda, would we have to remand for the court to address the issue of prejudice under Brecht? I honestly don't think that a remand would be necessary in a case like this. I think that this court could make that determination on its own. It really is a legal determination. It doesn't really depend upon a lot of fact-finding. I think that this court would actually be equipped to make that harmlessness analysis on its own. But was there any independent physical evidence or other evidence linking Figueroa to the site of the shooting? Yes, there were the shotgun shells that were found that he had had. Then there's, of course, the statements that he had made himself to his girlfriend or to the girl who was the victim of the original, what started this whole thing. So those statements outside of his statements would also be admissible. And I've argued those in the brief. But I think this court would be equipped to address the prejudice analysis if it needed to. Thank you. Thank you, counsel. Sorry for the sound problems. I can't say for sure they were yours or whether they're ours. Anyway, Ms. Casadillo. Thank you, Your Honor. Just briefly, my colleague would like you to believe that unless you can find an unreasonableness under Richter, you cannot grant relief here. But, in fact, this case is much like Kip v. Davis, in which this court found the rule of general application, i.e., whether the due process clause had been violated, was unreasonably determined by the state court because of various unreasonable determinations of fact. And the same thing could be said here. Here, the state court really ignored the fact that Figueroa was confronted with the failure of the polygraph exam  Mr. Figueroa thought he was coming to be interviewed about a stolen bicycle. He didn't learn until well into the interview that he was being questioned about a murder. And so the voluntariness of this really is not as strong as the state court would have you believe. And I'm out of time, Your Honor. All right. Thank you, counsel. Figueroa v. DuPart will be submitted, and we'll take up U.S. v. Flint.
judges: Kleinfeld, Wardlaw, Gould